# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| 3Q DIGITAL, INC. ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES CITIZENSHIP ) <br> AND IMMIGRATION SERVICES, *et al.*, ) <br> ) <br> *Defendants*. ) <br> ) | Case No. 1:19-cv-579-RCL |

## MEMORANDUM OPINION

On April 2, 2018, plaintiff 3Q Digital, Inc. ("3Q Digital") submitted a petition to United States Citizenship and Immigration Services ("USCIS") to classify Mr. Balaji Ullal Bhat as a temporary nonimmigrant worker under the H-1B visa program. On November 27, 2018, USCIS denied the petition. In March of 2019, 3Q Digital brought suit under the Administrative Procedure Act against defendants Kirstjen M. Nielson (in her official capacity as Secretary of Homeland Security), L. Francis Cissna (in his official capacity as Director of USCIS), Kathy A. Baran (in her official capacity as Director of the USCIS California Service Center), and USCIS. Plaintiff filed for summary judgment on June 28, 2019 (ECF No. 22), and defendants cross-filed for summary judgment on August 16, 2019 (ECF No. 25). Upon consideration of all motions, oppositions, and replies, the Court finds that defendants did abuse their discretion in denying plaintiff's petition. The Court will therefore **GRANT** Plaintiff's Motion for Summary Judgment and **DENY** Defendants' Motion for Summary Judgment.

1

## BACKGROUND

3Q Digital describes itself as "a fully-integrated digital marketing agency that provides marketing services in Business-to-Business . . . and Business-to-Consumer . . . companies across a wide range of industries, as well as e-commerce businesses and lead-generation-oriented companies." ECF No. 22 at 5. On April 12, 2018, 3Q Digital filed a FORM I-129 Petition for H-1B Classification on behalf of Mr. Bhat. They sought to employ him as a Search Engine Marketing Account Manager. 3Q Digital stated that because the position requires the application of economics, marketing, and business principles, the Search Engine Marketing Account Manager would need a bachelor's degree or higher in Economics, Marketing, Business, or another related field.

3Q Digital also submitted an ETA Form 9035, Labor Conditions Application ("LCA"), Certified by the Department of Labor. The LCA classified the offered position under the Standard Occupation Code 15-1199, Computer Occupations, All Other. They specified that the position in question is most closely related to the SOC 15-1199.10 sub-classification, covering Search Marketing Strategists-related occupations. Additionally, 3Q Digital submitted the Foreign Labor Certification Data Center wage source summary as well as the Occupational Information Network ("O*NET") report, which outlined the skills, technological tools, work activities, knowledge, education, and training usually associated with Search Marketing Strategists-related positions. O*NET specifies that such a position requires considerable skill, knowledge, experience, training, and preparation. 3Q Digital's petition also noted that Mr. Bhat received a Bachelor of Arts degree in Economics from the University of Massachusetts in 2017 and described the courses he took to prepare him for this type of work.

On June 22, 2018, USCIS' California Service Center issued a Request for Additional Evidence to prove that the offered position qualifies as a specialty occupation within the meaning of the applicable statute and federal regulation. 3Q Digital responded to this request, but USCIS still found that 3G Digital had not established that the position in question warranted an H-1B visa. USCIS formally denied the petition on November 27, 2018, stating that the Search Engine Marketing Account Manager position was not a specialty occupation. 3G Digital filed this lawsuit seeking review of the agency's decision.

## LEGAL STANDARD

### I. Judicial Review of Administrative Decisions

Both parties have filed for summary judgment under Federal Rule of Civil Procedure 56. In the administrative law context, however, the normal Rule 56 standard does not apply. Instead, when reviewing an agency decision like the one in question, the Court must determine whether that decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The inquiry is "narrow," and the Court may not "substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). This standard of review is "highly deferential" to the agency. *Nat'l Tel. Coop. Ass'n v. FCC*, 563 F.3d 536, 541 (D.C. Cir. 2009). Agencies, however, do not have unfettered discretion, and courts must ensure that agencies are making decisions that can be justified based on the administrative record.

### II. Specialty Occupations and H-1B Petitions

8 U.S.C. § 1184 defines a specialty occupation as one requiring "theoretical and practical application of a body of highly specialized knowledge, and . . . attainment of a bachelor's or

higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1)(A)–(B). In deciding whether the position in question constitutes a "specialty occupation," the agency is bound by 8 C.F.R. § 214.2(h)(4)(iii)(A). Under this regulation, a petitioner has four ways to demonstrate that an H-1B visa is warranted:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;
>
> (2) The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
> (3) The employer normally requires a degree or its equivalent for the position; or
>
> (4) The nature of the specific duties [is] so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4). If a petitioner proves by a preponderance of the evidence that any one of these four subclauses is satisfied, then the agency must grant the petition. Therefore, the Court must determine whether the agency abused its discretion in deciding that the Search Engine Marketing Account Manager position did not meet any of these four subclauses.

## ANALYSIS

USCIS found that 3Q Digital failed to prove by a preponderance of the evidence that any subclause of 8 C.F.R. § 214.2(h)(4)(iii)(A) was satisfied. 3Q Digital argues that the agency's decision was an abuse of discretion, as the position satisfied subclauses 1, 2, and 4. As explained below, the Court finds that although defendants acted within the bounds of their discretion with regard to subclauses 2, 3, and 4, they acted arbitrarily and capriciously with respect to subclause

4

1.[1] Because subclause 1 on its own is sufficient to warrant approval of an H-1B visa, the Court must set aside the agency's decision.

**I. The Agency Abused Its Discretion in Determining That a Baccalaureate or Higher Degree or Its Equivalent Is Not Normally the Minimum Requirement for Entry into the Search Engine Marketing Account Manager Position.**

Subclause 1 requires the agency to grant an H-1B visa if a baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the position. 8 C.F.R. § 214.2(h)(4)(iii)(A)(1). USCIS determined that there is not normally such a requirement for the Search Engine Marketing Account Manager position. USCIS interpreted subclause 1 to require not just any degree, but a degree in a specific field, and USCIS determined that 3Q Digital did not submit enough evidence to prove this by a preponderance of the evidence. For the reasons set forth below, the Court agrees with 3Q Digital that the agency's decision was arbitrary and capricious.

As part of their petition, 3Q Digital submitted a summary report from O*NET stating that "most" Search Marketing Strategist positions "require a four-year degree, but some do not." Administrative Record ("AR") at 53. The record also shows that 78% of employers require a bachelor's degree for this type of position. AR at 189-90. Subclause 1 does not say that a degree must always be required, yet the agency appears to have substituted the word "always" for the word "normally." This is a misinterpretation and misapplication of the law, and by effectively holding the plaintiff to a higher standard than that which is set by the regulation, USCIS abused its discretion. Another central issue in the analysis of subclause 1 is whether the position must normally require a degree *in a specific field*. Essentially, if subclause 1 can be satisfied when the

---

[1] 3Q Digital does not attempt to argue that they normally require a degree for the position, so subclause 3 is not at issue and therefore will not be discussed further in this Memorandum Opinion.

5

position normally requires a degree in any field, then the agency abused its discretion by finding that 3Q Digital did not prove by a preponderance of the evidence that subclause 1 was met. If, however, subclause 1 can only be satisfied when the position normally requires a specific major or list of majors, then the agency did not abuse its discretion.

The Court finds that subclause 1 does not require a degree in one specific major. To hold that O*NET must list one specific major for a position defies all logic, as many positions that fall under subclause 1 could be filled by people with different majors, so long as those majors are in the same general field or fields of study. Although the D.C. Circuit does not appear to have ruled directly on this issue, both parties cite D.D.C. case law as persuasive authority to support their interpretations of subclause 1. Defendants cite *Sagarwala v. Cissna*, wherein the Court agreed with USCIS that subclause 1 requires the position in question to necessitate a degree in a specific specialty rather than just any general four-year degree. 387 F. Supp. 3d 56, 61 (D.D.C. 2019). *Sagarwala*, however, dedicated only a few sentences to this issue. *Id.* at 61. In fact, the degree requirement does not appear to have been a central issue in that case, and the Court seems to have concluded without further explanation that the degree must be in a specific field. Therefore, although *Sagarwala* technically does support the agency's argument, that opinion's focus was not on the key issue that the Court must resolve in this case.

In contrast, *Relx, Inc. v. Baran* (cited by 3Q Digital) thoroughly analyzes this precise question. *See* 397 F. Supp. 3d 41 (D.D.C. 2019). In *Relx*, USCIS denied a petition for an H-1B visa, which the Court found to be arbitrary and capricious. As the Court in that case noted, "[t]here is no requirement in the statute that only one type of degree be accepted for a position to be specialized." *Id.* at 54.[2] This Court agrees with that conclusion. As previously mentioned,

---

[2] It is worth noting that in *Relx*, the agency never exercised its right to appeal the District Court's decision.

more than one degree could qualify someone for the same position, as "[d]iplomas rarely come bearing occupation-specific majors." *Id.* (quoting *Residential Fin. Corp. v. U.S. Citizenship & Immigration Servs.*, 839 F. Supp. 2d 985, 997 (S.D. Ohio 2012)).

Of course, common sense dictates that there must be *some* limits on what type of degree can qualify. When reading subclause 1 in isolation, there is no mention of the degree needing to be in any specific field or set of fields. When reading subclause 1 in conjunction with the governing statute, however, it becomes clear that there are some limitations on the type of degree that can qualify for a certain position. 8 U.S.C. § 1184 defines a specialty occupation as one requiring the "theoretical and practical application of a body of highly specialized knowledge, and . . . attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1)(A)–(B). Therefore, although subclause 1 is not limited to one specific major, it can be inferred that there must still be a relevant connection between the field of study and the demands of the position. For example, it would defy logic to say that a marketing position is a specialty occupation if the company allows that position to be filled by someone with a degree only in biology (or vice versa). Four-year degrees are available in both marketing and biology, but they cover completely different bodies of knowledge with little or no overlap

The "marketing-versus-biology problem," however, does not exist in this case. It is true that O*NET does not provide a dispositive list of majors for the position, but to do so would actually be contrary to 8 U.S.C. § 1184; the statute's definition of "specialty occupation" includes not only a formal degree, but also the "equivalent" of that degree, which could include specialized training outside of a formal academic setting. 8 U.S.C. § 1184(i)(1)(A)–(B). In a situation where a petitioner meets subclause 1 through the "equivalent" of a formal degree, a list

7

of specific majors would be irrelevant and impossible to meet, so to say that O*NET must list specific majors would conflict with the statute. What matters is not the precise major that students chose in college, but rather the knowledge that they gained and the skills that they were taught. The petitioner must show that the position can only be filled by someone who has trained in or studied certain bodies of knowledge that are relevant to the position, but a petitioner does not need to submit evidence of a dispositive list of majors or academic concentrations.

If O*NET simply stated that a four-year degree is normally required for a Search Marketing Strategic position and gave no further details, the agency would have been perfectly justified in finding that the O*NET report does not satisfy subclause 1. In that case, the evidence would have proven only that a four-year degree in the broadest sense is generally required, thus leading to the "marketing-versus-biology problem." Here, however, O*NET does not state that a degree in a wholly unrelated field is sufficient for this job. On the contrary, the O*NET report shows that Search Marketing Strategists positions regularly require knowledge of the following:

> **Sales and Marketing** – Knowledge of principles and methods for showing, promoting, and selling products or services. This includes marketing strategy and tactics, product demonstration, sales techniques, and sales control systems . . .
> **Communications and Media** – Knowledge of media production, communication, and dissemination techniques and methods. This includes alternative ways to inform and entertain via written, oral, and visual media . . .
> **Mathematics** – Knowledge of arithmetic, algebra, geometry, calculus, statistics, and their applications.
> **Administration and Management** – Knowledge of business and management principles involved in strategic planning, resource allocation, human resources modelling, leadership technique, production methods, and coordination of people and resources.

AR at 186. O*NET further explains that this position requires—among other skills—complex problem solving, critical thinking, judgment and decision making, systems analysis, systems evaluation, coordination, and monitoring. *Id.* Such descriptions go far beyond merely stating that a four-year degree is generally required. Although the O*NET report does not list any specific

8

majors, the appropriate majors for the job can be easily inferred from the list of skills laid out above. For example, an economics degree (which is what Mr. Bhat earned) would naturally include the study of at least three of the categories listed above: sales and marketing, mathematics, and administration and management. Of course, an economics degree is not the only degree that could meet these requirements. It is likely that a marketing major, a communications major, or a mathematics major (among numerous others) could also qualify for this job. An applicant with only a degree in biology, however, would probably be deemed unqualified for this position under the O*NET report, as biology is completely outside the realm of a Search Marketing Strategist-type job. Therefore, even though the O*NET report does not list specific majors, it does inherently provide some limitations on what degrees qualify a person for this type of job. The Court finds that this is sufficient to prove the existence of a specialty occupation and that USCIS's rationale for disregarding the O*NET report was arbitrary and capricious.

The agency claims to rely upon the Occupational Outlook Handbook ("OOH") instead of the O*NET report, arguing that this choice is within its discretion. Although USCIS does have a great deal of discretion about how to weigh different pieces of evidence, its discretion is not without limits. The Court finds that using the OOH over the O*NET report is arbitrary and capricious. The American Immigration Lawyers Association recently submitted a Freedom of Information Act ("FOIA") request, and in response the government turned over documents that are pertinent to this case. These documents show that USCIS is improperly relying on the OOH to make legal conclusions about whether a position qualifies as a specialty occupation. The Bureau of Labor Statistics instructed USCIS numerous times that this is not an appropriate use of the OOH. Additionally, USCIS's internal emails specify that the OOH alone cannot be used to

determine whether a position is a specialty occupation. This evidence supports 3Q Digital's argument that treating the OOH as the authority on specialty occupations is an abuse of discretion.[3] The agency's request for (and insistence upon using) the OOH is therefore arbitrary and capricious, especially in light of the fact that 3Q Digital had already submitted the O*NET report, which (as explained above) is sufficient to prove that the position in question constitutes a specialty occupation.

There are certain fields of study where the lines governing a "specialty occupation" are undoubtedly much more clear-cut. For example, employment as a physicist is plainly a specialty occupation that is most likely going to be open only to someone with a four-year (or higher) degree in physics. With a Search Marketing Strategist position, the lines are less obvious. This does not, however, mean that USCIS can deny a petition simply because there is no database that provides a dispositive list of the precise college majors that qualify someone for a job. Specialty occupations are not limited to the hard sciences, and this Court will not tolerate any attempts within the agency to artificially create such limits in direct contravention of the governing statute and regulation. In this case, the agency's decision regarding subclause 1 constitutes an abuse of discretion, meaning that the Court must set aside that decision.

---

[3] 3Q Digital brought these FOIA results to the Court's attention through a Notice of Supplemental Authority filed on January 31, 2020 (ECF No. 36). Defendants oppose that Notice (ECF No. 37), arguing that the Court is only allowed to look at the materials the agency had in front of it when it made its decision. This argument fundamentally misunderstands the standard of review. It is true that 3Q Digital cannot submit to this Court additional facts about Mr. Bhat's qualifications that the agency did not consider in making its decision; however, instructions from a government agency about what general sources of information are acceptable to use in making that decision are very different. The additional documents show that the agency was not supposed to be using the OOH to make legal conclusions, which is exactly what it did in this case. The FOIA documents do not try to sway the Court with new *facts* about this case. Rather, the FOIA documents show that the agency abused its discretion by applying the wrong *legal standard* when considering visa applications like Mr. Bhat's. Furthermore, even without these additional FOIA documents, the Court still would have come to the same conclusion regarding subclause 1, and the information contained in the Notice only bolsters that decision.

## II. The Agency Did Not Abuse Its Discretion in Determining That the Degree Requirement Is Not Common to the Industry in Parallel Positions among Similar Organizations.

Subclause 2 requires the agency to grant an H-1B petition if the petitioner proves either that the degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, proves that the particular position in question is so complex or unique that it can be performed only by an individual with a degree. 8 C.F.R. § 214.2(h)(4)(iii)(A)(2). 3Q Digital argues that they proved by a preponderance of the evidence that the degree requirement is common to the industry in parallel positions among similar organizations. Because 3Q Digital appears to have abandoned any argument regarding the position being so complex or unique that it requires a degree, the Court will not address that aspect of subclause 2.

USCIS's determination that that the degree requirement is not common to the industry in parallel positions among similar organizations was neither arbitrary nor capricious. The agency concluded that the job postings from other companies that 3Q Digital submitted did not come from similar organizations and did not sufficiently indicate a common need for a degree. 3Q Digital provided no evidence that either Barkley or Paycom (the two companies whose job postings they submitted) are similar organizations. When USCIS sent the Request for Additional Evidence specifically asking for information on this point, 3Q Digital did not take the opportunity to provide it. The agency was also concerned that the Barkley position did not require a degree in a specific specialty and that the Paycom position specifically required a degree in marketing. For the reasons explained above, the Court is less concerned with Barkley's lack of a requirement that the degree be in one specific specialty, but 3Q Digital should have made some effort to show that Barkley usually hires candidates whose degrees fall within certain general areas of study (in other words, evidence that the "marketing-versus-biology problem" is

11

not an issue here). The Court can also see why the agency was concerned that Paycom requires a marketing degree, as such a requirement suggests that the position at Paycom is more limited to marketing than is the position at 3Q Digital, thus raising questions about whether the positions are truly parallel. Additionally, even if these two job postings did clearly support 3Q Digital's petition, the agency would still have been within its discretion to say that two job postings are insufficient to show commonality across an entire industry.

Furthermore, the agency did not act arbitrarily in determining that Dr. Arthur C. McAdams's report failed to satisfy subclause 2. The Court sees why the agency deemed Dr. McAdams's findings on this point to be conclusory. As explained below in Part III, the agency was within its discretion to find his conclusions lacking, particularly because of the questionable information upon which he relied in forming those conclusions. Of course, in holding that the agency did not abuse its discretion with regard to subclause 2, the Court is not necessarily saying that it agrees with the agency's decision; rather, the Court is saying that the evidence 3Q Digital presented was not sufficient to make that decision an abuse of discretion. It is quite possible that sufficient evidence exists to prove that subclause 3 applies—3Q Digital simply failed to provide it. The agency's abuse of discretion with respect to subclause 1, however, is still sufficient to warrant reversal, as a petitioner only needs to meet one of the four subclauses to succeed in obtaining an H-1B visa.

### III. The Agency Did Not Abuse Its Discretion in Determining That the Nature of the Specific Duties Are Not Specialized and Complex Such That the Knowledge Required to Perform the Duties Is Usually Associated with the Attainment of a Baccalaureate or Higher Degree.

Subclause 4 requires the agency to issue an H-1B visa if the petitioner proves by a preponderance of the evidence that the nature of the specific duties is so specialized and complex that the knowledge required to perform the duties is usually associated with the attainment of a

baccalaureate or higher degree. 8 C.F.R. § 214.2(h)(4)(iii)(A)(4). In an effort to satisfy subclause 4, 3Q Digital submitted a list of duties associated with the position as well as a letter from Dr. McAdams explaining why he believed that a degree was necessary. The agency determined that these documents did not prove by a preponderance of the evidence that the job is so specialized and complex as to require a degree.

This decision was neither arbitrary nor capricious. 3Q Digital's description of the job and its responsibilities was generalized and abstract. For example, 3Q Digital stated that 60% of Mr. Bhat's time would be allocated among the following three duties: (1) "[i]mplementing testing initiatives in key areas such as ad creative, landing page messaging, landing page layout audience segmentation, placement, networks, and third-party tools," (2) "[c]ampaign monitoring to ensure the account is pacing well relative to budgets and targets," and (3) "[q]uantifying and prioritizing initiatives/opportunities accordingly." AR 143. Defendants were within their discretion to find that "[t]hese descriptions at best identify goals and general areas of responsibility for the positions, but they do not identify the specific duties that the incumbent of the position will be responsible for performing on a day-to-day basis." ECF No. 25-1 at 12. These types of vague, generalized descriptions are insufficient to require the agency to find that the duties are specialized and complex.

Defendants have also adequately justified their decision not to rely upon Dr. McAdams letter. Dr. McAdams based his conclusions upon the same description of the position that 3Q Digital submitted to USCIS. It stands to reason that if the description was insufficient, any conclusion based on that description would be inherently unreliable. 3Q Digital argues that Dr. McAdams is highly qualified, going into great deal about his experience and accomplishments and arguing that USCIS has accepted his opinions before. These arguments, however, miss the

13

mark. An analogy to Federal Rule of Evidence 702 is useful here. Rule 702 requires that a witness (a) have scientific, technical or other specialized knowledge; (b) have sufficient facts and data; (c) use reliable principles and methods; and (d) reliably apply the principles and methods to the facts of the case. Oftentimes, no party disputes that a witness meets the requirements of Rule 702(a), as it is clear that the witness has the requisite specialized knowledge. Still, a party may claim that the witness did not have sufficient facts and data under Rule 702(b) to draw a proper conclusion. If Rule 702(b) is not met, it does not matter how many advanced degrees or years of experience the witness has—he or she will not be permitted to testify to any expert conclusions. Similarly, it does not matter how many times Dr. McAdams's opinions have been accepted before, nor does it matter how extensive his experience is. No one disputes that he is knowledgeable on the subject, but the agency was still within its discretion to find that the underlying facts upon which he depended were flawed, thus making his conclusion unreliable. It is not this Court's place to tell an agency how to weigh the evidence it reviews, so long as the agency's weighing of that evidence is not arbitrary.

    3Q Digital argues that by rejecting his conclusion for being based on insufficient facts, the agency tried to force Dr. McAdams to conduct his own investigation, which is something that not even USCIS does. This argument is flawed for two reasons. First, Dr. McAdams would have had no need to conduct an independent investigation into the facts if 3Q Digital had simply given him those facts in the first place; however, as previously explained, the agency deemed the descriptions that the plaintiff gave both Dr. McAdams and USCIS to be insufficient. Second, in arguing that the agency asked Dr. McAdams to do something that the agency itself was unwilling to do, 3Q Digital ignores that they bore the burden to prove that Mr. Bhat qualified for an H-1B visa. It was not the agency's responsibility to go out and investigate what a Search Engine

Marketing Account Manager does—it was 3Q Digital's burden to present that information. They chose to do so through Dr. McAdams, but by giving him insufficient information, they were the ones who undermined the validity his ultimate conclusion.

Like with subclause 2, the Court is not necessarily saying that it agrees with the agency's decision regarding subclause 4. It is, however, the Court's responsibility not to substitute its own judgment for that of the agency's. After reviewing the evidence, is clear that defendants did not abuse their discretion in finding that 3Q Digital did not satisfy subclause 4. The agency's abuse of discretion with respect to subclause 1, however, is still sufficient to warrant reversal, as a petitioner only needs to meet one of the four subclauses to succeed in obtaining an H-1B visa.

## CONCLUSION

Based on the foregoing, the Court finds that defendants acted arbitrarily and capriciously in denying plaintiff's H-1B petition. The Court will therefore **GRANT** Plaintiff's Motion for Summary Judgment (ECF No. 22) and **DENY** Defendants' Motion for Summary Judgment (ECF No. 25).

It will be **ORDERED** that defendants' administrative decision is set aside.

It will be **FURTHER ORDERED** that defendants shall reopen the case and approve plaintiff's H-1B petition.

A separate Order accompanies this Memorandum Opinion.

Date: 3/6/2020

Royce C. Lamberth
United States District Court Judge

15